# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| **MRBRAZ & ASSOCIATES, LLC,** | § § § | |
| **Plaintiff,** | § § | |
| v. | § § | Civil Action No. |
| **JRG REFRIGERATION, INC.** | § § § | |
| **Defendant.** | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff MRBRAZ & Associates LLC (hereinafter referred to as "MRBRAZ" or "Plaintiff") now files this Original Complaint against JRG Refrigeration, Inc. (hereinafter referred to as "JRG" or "Defendant") as follows:

### VENUE AND JURISDICTION

1. Plaintiff is based in Azle, Tarrant County, Texas. Defendant is headquartered in Logan, Utah and is believed to be incorporated there as well. Therefore, there is complete diversity of citizenship between the Parties, and thus the Court has diversity jurisdiction over this matter. Venue is proper in this Court because Plaintiff's headquarters and principal operations are in Azle, Tarrant County, Texas and the General Terms and Conditions report was negotiated from Tarrant County, Texas. Further, the parties contractually agreed to treat all actions under the General Terms and Conditions agreement between them as if actions were taken in Texas.

### PARTIES

2. Plaintiff is a Texas Limited Liability Company with its principal place of business at 2004 W Timberlake St., Ste 102, Azle, Texas 76020.

3. Defendant JRG Refrigeration, Inc. is a corporation with its principal place of

**Plaintiff's Original Complaint - Page 1**

business at 695 W 1700 S, Building 29, Suite 104, Logan, UT 84321, and can be served with process via its Registered Agent, Jack R. Gage, at 15890 N. Beaver Dam Road, Collinston, Utah 84306.

### BACKGROUND

4. MRBRAZ is a leading manufacturer of ammonia-based industrial refrigeration units in the United States, primarily for large-scale warehouses and distribution centers. The majority of MRBRAZ's work is performed on construction projects for Walmart. These complex "packages" are engineered and manufactured by MRBRAZ both at its Azle, Texas facilities and at other facilities located near specific project sites.

5. MRBRAZ generally acts as a subcontractor hired by the general contractor on these projects, but its relationship with end users (like Walmart) can dramatically affect whether they are hired on future projects. In turn, MRBRAZ hires its own subcontractors to provide goods and services to MRBRAZ related to these projects.

6. MRBRAZ typically works under very tight schedules set by customers and general contractors. Delays caused by MRBRAZ' s subcontractors can delay the completion, delivery, and installation of its packages, which in turn can delay the completion of the entire construction process. This would threaten MRBRAZ's relationship and future business opportunities with the general contractor. Consequently, MRBRAZ must be able to retain subcontractors who are reliable and competent and who offer competitive pricing.

7. The Company thought it had identified such a partner in JRG. Based out of Logan, Utah, JRG provides industrial refrigeration support, including metal work, piping, duct work, and other products and services.

8. On September 8, 2022, MRBRAZ contracted with JRG, via a purchase order, to provide services on a project located in Corinne, Utah. Subsequently, MRBRAZ entered into

another Purchase Order with JRG to support its Johnstown, New York industrial refrigeration package.

9. Initially, it appeared that JRG was doing acceptable work on each project, but MRBRAZ in late 2023, performance issues began to come to light.

10. When MRBRAZ hired JRG as a subcontractor, the parties entered into a General Terms and Conditions agreement (the "Terms and Conditions"). Each new project would be described in a Scope of Work ("SOW"), appended to the Terms and Conditions. The work was also reflected in Purchase Orders from MRBRAZ, and finally was billed by the subcontractor via an invoice. The projects in Corinne and Johnstown were significant, both with respect to the scope of the work and the cost. When JRG entered into the Terms and Conditions and SOWs, it knew, but gave MRBRAZ no inkling, that it was facing financial conditions that were likely to affect their resources and inhibit their ability to complete the projects. This information was essential and material to MRBRAZ. If JRG had disclosed this information, MRBRAZ would not have retained them, given the potential impact on MRBRAZ's ability to remain on schedule and meet their client's demands.

11. Among other obligations under the Terms and Conditions, JRG was required to:

- Conduct all services in a diligent and skillful manner.  Article 1, §1.3.3;
- Pay unemployment taxes for its employees.  Article 4, §1.5;
- Provide a sufficient number of competent personnel. Article 4, §1.1.(a);
- Fully pay "all Claims against Contractor by its suppliers, and Subcontractors for labor, Goods, Equipment, and Service of any kind furnished in connection with Contractor's obligation under this Contract. Article 5, §1.1; and

**Plaintiff's Original Complaint - Page 3**

- Indemnify MRBRAZ from and against any and all Claims asserted by any third Party. Article 7, §1.3.

12. Representations regarding JRG's financial stability were material to the Terms and Conditions, which required JRG to confirm that it "possesses . . . the technical competence, *financial capability* and management skills for the performance of Contractor's [JRG's] obligations." Terms and Conditions ¶1,3,3, (emphasis added).

13. Not knowing this information and trusting JRG to comply with its representations and obligation to disclose material information regarding their financial ability to complete the projects, MRBRAZ agreed to the SOWs, subject to the Terms and Conditions, for each of the two locations.

14. JRG's work on these projects, particularly in Johnstown, was surprisingly bad. MRBRAZ addressed the performance issues multiple times during their regular Construction Program Manager meeting and in emails and other communications. At no point did JRG disclose that their work on the project was being impacted by their financial problems.

15. In or around February 2024, JRG's employees simply walked off the job in Johnstown, without notice, allegedly because of financial issues that kept them from completing their work (presumably costs of materials and payroll). On February 12, 2024, MRBRAZ advised JRG that they were in breach of the Terms and Conditions and SOW. MRBRAZ further advised JRG that due to the walk-off, JRG no longer would be permitted access to either job site except to recover their tools and equipment.

16. By abandoning the jobsites, JRG caused significant increased costs for MRBRAZ and substantially threatened its ability to meet its own deadline. MRBRAZ not only suffered the loss of money paid to JRG for unacceptable and substandard work, but they also paid inflated costs

caused by having to retain a subcontractor to replace JRG with immediate availability available to support the projects.

17. On top of that, JRG breached its Terms and Conditions with MRBRAZ to pay its own sub-contractors, who consequently have demanded payment directly from MRBRAZ before performing any additional work at either site, as well as threatened liens to secure payment. MRBRAZ, in order to continue its work, was forced to pay these amounts incurred by JRG.

18. Multiple demands to JRG to compensate MRBRAZ for its losses and to pay JRG's own subcontracts have been ignored.

19. Given no other options, MRBRAZ has been forced to file suit to recover its losses.

## CAUSES OF ACTION

### COUNT ONE - BREACH OF CONTRACT

20. The allegations contained in the foregoing paragraphs are incorporated herein fully by reference.

21. MRBRAZ and JRG entered into binding and enforceable agreements by which JRG agreed to provide piping and services to MRBRAZ in exchange for an agreed price.

22. MRBRAZ complied with its obligations under those agreements.

23. JRG breached those contracts by (without limitation):

    a. Performing substandard work;

    b. Refusing and failing to complete the work which it promised to do under the agreement;

    c. Failing to pay its own subcontractors; and

    d. Failure to pay unemployment taxes for its employees.

24. As a result of JRG's breaches, MRBRAZ has suffered damages, the recovery of which is sought herein.

**Plaintiff's Original Complaint - Page 5**

25. In addition, pursuant to Section 38.001 of the TEX. CIV. PRACT. & REM. CODE, MRBRAZ is entitled to recover its court costs, including reasonable and necessary attorney's fees because of JRG's breach of contract.

## COUNT TWO - FRAUD

26. The allegations contained in the foregoing paragraphs are incorporated herein fully by reference.

27. In the course of negotiating the agreement between the parties, JRG made representations to MRBRAZ and/or omitted critical information.

28. Those representations and/or omissions were material.

29. JRG made the representations or omissions knowingly or recklessly.

30. JRG made the representations or omissions with the intent to induce MRBRAZ to enter into a contract with JRG.

31. MRBRAZ reasonably relied on JRG's representations or omissions by entering into subcontractor agreements with JRG.

32. As a result of such fraud, MRBRAZ has suffered damages, the recovery of which is sought herein.

33. Further, because JRG's actions were intentional or reckless, MRBRAZ seeks the recovery of punitive damages.

## COUNT THREE - ATTORNEY FEES

34. The allegations contained in the foregoing paragraphs are incorporated herein fully by reference.

35. MRBRAZ has employed the undersigned law firm to prosecute the claims set forth herein. MRBRAZ is entitled to recover reasonable attorneys' fees against JRG pursuant to each respective agreement and Section 38.001 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE.

MRBRAZ seeks recovery of reasonable attorneys' fees in an amount to be proven at trial.

**WHEREFORE,** Plaintiff respectfully prays:

1. that Defendant be cited to appear and answer herein;

2. that judgment be entered for Plaintiff on all counts and that Plaintiff be awarded:

    a. Actual damages;
    b. Consequential damages; and
    c. Exemplary damages.

3. that Plaintiff be rendered final judgment against Defendant for prejudgment and post-judgment interest as provided by applicable law;

4. that Plaintiff be awarded its costs and expenses, including reasonable and necessary reasonable attorneys' fees against Defendant;

5. that Plaintiff be granted judgment for all court costs; and

6. that Plaintiff be awarded all such other and further relief, both general and special, at law or in equity to which Plaintiff may show itself justly entitled.

Respectfully Submitted,

**HAGAN LAW GROUP, LLC**

By: /s/ R.S. "Rob" Ghio
John Hagan
State Bar No. 24002203
Email: john@hr-lawgroup.com
R.S. "Rob" Ghio
State Bar No. 00787531
Email: rob@hr-lawgroup.com
1333 W. McDermott Drive, Suite 200
Allen, Texas 75013
Telephone: (469) 519-2700
Telecopier: (469) 208-5366

**ATTORNEYS FOR PLAINTIFF
MRBRAZ & ASSOCIATES, PLLC**